AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
iPhone (White) )   Case No.  23-mj-08041-LR
Model: Apple Iphone )
IMEI: 352976097212794 )

**FILED**
Jan 26 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ carolinal   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Miguel Flores incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: ____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Miguel Flores Border Patrol Agent-Intelligence
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: 01/26/2023

_____
Judge's signature

City and state: El Centro, California   HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
Printed name and title

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> iPhone (White)
> Model: Apple iPhone
> IMEI: 352976097212794
> Seized from Josue Hiram ZENDEJAS-Barragan
> **(Target Device)**



BACK   FRONT

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEM TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 5, 2022, up to and including January 5, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** iPhone (White)
Model: Apple Iphone
IMEI: 352976097212794
Seized from Josue Hiram ZENDEJAS-Barragan
**(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Josue Hiram ZENDEJAS-Barragan (ZENDEJAS), for illegally bringing into the United States aliens Celerina REYES-Cornelio (REYES), and Isauro REYES-Cornelio (REYES), (the "Material Witnesses") in violation of 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from ZENDEJAS on or about January 4, 2023, incident to their arrest. The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.	I have been employed as a full-time sworn federal agent with the U.S. Border Patrol since December 4, 2006, having graduated from the Basic Border Patrol Training Academy located in Artesia, New Mexico.  The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.	I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.	Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

3

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On January 4, 2023, Border Patrol Agents assigned to the El Centro Sector Intelligence Unit's Field Intelligence Team (FIT) were conducting surveillance in Calexico, California. At approximately 6:30 p.m., the Mobile Surveillance Capability (MSC) operator observed two individuals walking away from the United States/Mexico International Boundary Fence (IBF) towards the east side of the Gordons Well Exit on Interstate 8. As the MSC operator broadcasted this information, FIT Agents were conducting surveillance on a silver Honda Accord (Honda), bearing California license plates, that was parked at the Imperial Sand Dunes rest area. The rest area is located on Interstate 8 just west of the Greys Well Exit. Record checks indicated the Honda was registered in Long Beach, California and had no recent immigration checkpoint or International Port of Entry crossings.

11. After being informed of the possible illegal entry by the individuals observed by the MSC operator, BPA M. Clinton requested the MSC operator continue monitoring

4

the two individuals in order to intercept the Honda if a smuggling event occurred. As the MSC operator kept constant visual on the two suspected illegal aliens, a Customs and Border Protection helicopter (Troy), travelled to the area and kept constant visual on the two individuals from the air.

12. BPA C. Toledo, who was positioned in the rest area, watched as the Honda reversed from its parking spot and merged onto the westbound lanes of Interstate 8. As the Honda travelled towards the Gordons Well Exit, BPA L. Heipt positioned his unmarked service vehicle behind the Honda and watched as it pulled over and came to a complete stop. As the Honda remained parked on the side of Interstate 8, both the MSC operator and Troy kept constant visual on the Honda, as well as the suspected illegal aliens and informed FIT Agents that the suspected illegal aliens were directly south of the Honda, concealing themselves on the shoulder of the eastbound lanes of Interstate 8. After approximately thirty seconds, FIT Agents, positioned in and around the area, watched as the Honda merged back on to the westbound lanes of Interstate 8, perform several driving maneuvers, and ended up back on the eastbound lanes of Interstate 8. As the Honda travelled eastbound on Interstate 8, FIT Agents, Troy and the MSC operator again watched as the Honda drove towards the suspected illegal aliens, passed their location, came to a complete stop, merged back into the driving lanes of Interstate 8, and travelled towards the rest area.

13. FIT Agents and Troy again kept constant visual on the Honda as it utilized the rest area to perform a U-turn, merge back onto the westbound lanes of Interstate 8 and travel towards the suspected illegal aliens. Troy and FIT Agents kept constant visual on the Honda while the MSC operator kept constant visual on the suspected illegal aliens. The Honda performed another series of driving maneuvers, including traveling westbound before driving eastbound again, and drove towards the rest area again. MSC operator informed Agents that the suspected illegal aliens had ran across Interstate 8 and were now concealing themselves on the northside of Interstate 8 in the westbound lanes.

14. FIT Agents and Troy again watched as the Honda utilized the rest area and repeated the driving maneuvers, this time with the suspected illegal aliens concealing

themselves north of the westbound lanes of Interstate 8. FIT Agents, still maintain mobile surveillance on the Honda, observed the suspected illegal aliens emerge from the north side of the westbound lanes of Interstate 8 and stand on the shoulder of Interstate 8 waving their cell phones. However, the Honda continued driving eastbound then westbound again, eventually slowing down and coming to a complete stop; away from the area that the suspected illegal aliens were standing. The Honda remained parked on the shoulder of Interstate for approximately three (3) minutes and the suspected illegal aliens ran from their location towards the Honda. After they finally reached the Honda, the MSC operator informed Agents that the two individuals entered the Honda and it was now travelling westbound on Interstate 8 towards the Gordons Well Exit. After the Honda turned and began driving eastbound again, approximately one mile west of the rest area, BPAs positioned their unmarked service vehicles behind the Honda and activated the emergency lights and sirens of their unmarked service vehicles in order to conduct a vehicle stop on the Honda and perform an immigration inspection on all occupants within the Honda. After activating the emergency lights and sirens of their unmarked service vehicles, the Honda continued travelling at approximately 65 miles per hour and did not slow down or attempt to pull over.

15. As FIT Agents continued to pursue the Honda past the rest area with the emergency lights and sirens activated, it became evident that the Honda was failing to yield. FIT Agents continued to pursue the Honda as it switched in and out of lanes and continued travelling past the Greys Well Exit. Shortly after passing the Greys Well Exit, the Honda slowed down, pulled over to the shoulder and came to a complete stop. FIT Agents approached the Honda with Border Patrol markings and insignia fully visible and identified themselves as a Border Patrol Agents to the driver, later identified as Josue Hiram ZENDEJAS-Barragan (ZENDEJAS), and questioned ZENDEJAS as to his citizenship. ZENDEJAS stated that he was a citizen of Mexico and a lawfully admitted Permanent Resident of the United States. While questioning ZENDEJAS, FIT Agents observed two individuals attempting to conceal themselves in the back seat. FIT Agents

identified themselves as Border Patrol Agents and questioned the two individuals as to their citizenship. Both individuals, later identified as Celerina REYES-Cornelio and Isauro REYES-Cornelio, admitted to being in the United States illegally and to making an illegal entry by climbing the border fence in an area other than through a designated Port of Entry. ZENDEJAS, C. REYES-Cornelio and I. REYES-Cornelio were subsequently placed under arrest and were transported to the Calexico Border Patrol Station.

16. A search incident to the arrest of ZENDEJAS by Agents uncovered one white iPhone cellular telephone (Target Device). The Target Device was found in the Honda and was seized as evidence. ZENDEJAS claimed ownership of the Target Device

17. At the Calexico Border Patrol Station, ZENDEJAS was advised of his rights as per Miranda. ZENDEJAS stated he understood his rights and was willing to provide a statement without the presence of an attorney. ZENDEJAS stated he was born in Mexico, is a citizen of Mexico and is a Legal Permanent Resident in the United States. ZENDEJAS also stated he resides in California and he owns the Honda he was driving today. ZENDEJAS stated that he answered to an advertisement in the classifieds and he was instructed to travel to a Motel 6 where he was given a "GPS point" and admitted he would be paid 450 dollars per person he transported. ZENDEJAS stated because of the amount of money he suspected he was likely picking up illegal aliens. ZENDEJAS stated when he traveled to the point of pickup, he picked up two people and was arrested shortly after as he was headed to Yuma, Arizona. ZENDEJAS stated that he knew smuggling was illegal.

18. Material Witness C. REYES-Cornelio stated she is a citizen of Mexico and does not have any legal documents allowing her to live, work or remain in the United States legally. REYES stated she traveled to Mexicali Baja, California two days ago by bus and she and her brother did not make arrangements to be smuggled. She stated that she saw on the news how to cross illegally. Material Witness I. REYES-Cornelio stated he is a citizen of Mexico and does not have any legal documents allowing him to live, work or remain in the United States legally. REYES stated he traveled to Mexicali two days ago by bus.

REYES stated he made arrangements with an unknown smuggler and he was to pay $5,000 USD to be illegally smuggled into the United States.

19. Based upon my experience and investigation in this case, I believe that ZENDEJAS was involved in an alien smuggling venture and that ZENDEJAS used Target Device #1 to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

20. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on December 5, 2022, up to and including January 5, 2023, the day after the arrest of ZENDEJAS.

## METHODOLOGY

21. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//

## CONCLUSION

24. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that ZENDEJAS used the Target Device to facilitate the offense of alien smuggling. The Target Device was likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by ZENDEJAS, the Material Witness, and others continues to exist on the Target Device. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Miguel Flores
Border Patrol Agent-Intelligence
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 26th day of January, 2023.

_____ 1:23 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> iPhone (White)
> Model: Apple iPhone
> IMEI: 352976097212794
> Seized from Josue Hiram ZENDEJAS-Barragan
> **(Target Device)**

BACK        FRONT



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

ITEM TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 5, 2022, up to and including January 5, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.